UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIXON SEED CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GREEN CO., LTD,<br><br>Defendant. | No. 2:23-cv-00198-DC-SCR<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Dixon Seed Corporation's motion for a default judgment in the amount of $1,078,332.14, plus $3,323.58 in costs, for a total of $1,081,655.72 (ECF No. 33 at 2-3),[1] is before the undersigned pursuant to Local Rule 302(c)(19). This motion was taken under submission on September 3, 2024. ECF No. 38. For the reasons provided below, the undersigned recommends that Plaintiff's motion be granted for the full amount requested.

**BACKGROUND**

Plaintiff, a global seed production company, initiated this matter by filing a Complaint on January 30, 2023 against Defendant, a Vietnamese vendor and purchaser of vegetable seeds. ECF

---

[1] Page number citations such as this are to the page number reflected on the court's CM/ECF system and not to the page numbers assigned by the parties.

1

No. 1 at 1-2 (Compl. at ¶¶ 2-4). The Complaint alleges that on October 31, 2019, Plaintiff as a seller and Defendant as a buyer entered a Sales and Service Agreement ("Agreement") to govern all future individual purchase order contracts. *Id.* at ¶¶ 11-13). The breach of any one purchase order contract, or invoice, would therefore double as a breach of the Agreement. *Id.* at ¶¶ 14-15.

For one of these contracts, dated March 9, 2021, the parties agreed in mid-April 2021 that Plaintiff would ship half the ordered seed by November 2021 and the other half in January or February 2022. *Id.* at ¶¶ 13, 17-18, 21. This shipment would require six shipping containers, which Defendant was supposed to pick up from Plaintiff's facility in Glenn, California. *Id.* at ¶¶ 20-22.

Per the agreement, Plaintiff fulfilled its duty by bringing the seed to that location, while Defendant assumed responsibility for arranging subsequent transport. *Id.* at ¶¶ 22-23. Plaintiff informed Defendant on October 19, 2021, that the product was ready for pickup. *Id.* at ¶ 24. Disputes between Defendant and its shipping partners continuously delayed pickup. *Id.* at ¶ 25.

The Complaint then alleges that on December 8, 2021, Plaintiff warned Defendant that between the COVID-19 pandemic and climate restraints, production of Cucurbit seed would be delayed. *Id.* at ¶ 26. Section 7.2 of the Agreement held that Plaintiff was not liable for delays caused by "Force majeure" events, but Plaintiff still reworked the shipping schedule around them. *Id.* at ¶¶ 28-29. Defendant cancelled two of the six shipment containers, then postponed the delivery date of the other four. *Id.* at ¶¶ 31-32.

The four uncancelled shipping containers were shipped from Plaintiff on January 31, 2022, and arrived at Defendant's facility in late February. *Id.* at ¶ 34. On April 22, 2022, Defendant wrote Plaintiff that it was accepting all but one lot of delivered seeds. *Id.* at ¶ 35. Because section 4.2 of the Agreement requires any rejection to be within 30 days of delivery, this was untimely. *Id.* at ¶ 36. On September 21, 2022, Plaintiff nevertheless offered a 100% refund of the rejected lot, or $10,387 in credit. *Id.* at ¶ 38.

The Complaint alleges that the amount owed under the March 9, 2021 contract, across three invoices, initially totaled $767,496.20. *Id.* at ¶ 39. This amount was due on April 2, 2022, 60 days from the date of the last invoice. *Id.* at ¶ 40. Defendant failed to pay this amount, which

has since accrued interest at a monthly rate of 1.5% under the Agreement. *Id.* at ¶¶ 41-43. As of the Complaint's filing, this interest had accumulated to 13.5% of the amount owed, or $103,611.99, for a total of $871,108.19. *Id.* at ¶¶ 44-46.

The Complaint alleges causes of action for breach of contract, declaration of rights under the Agreement, breach of the implied covenant of good faith and fair dealing, conversion, negligence, unjust enrichment, and violation of California Business and Professions Code ("Cal. Bus. & Prof.") § 17200 *et seq.* ECF No. 1 at 7-12. It seeks all damages owed under the Agreement, a declaration that Plaintiff is entitled thereto, damages based on Defendant's benefit in receiving the goods, and costs of suit. *Id.* at 13.

On June 11, 2024, Judge Morrison England, Jr., granted Plaintiff's motion to serve the Summons and Complaint by email. ECF No. 21. The executed Summons were returned on June 14, 2024. ECF No. 23. Plaintiff requested entry of default on July 11, 2024, and default was entered on July 15, 2024. ECF Nos. 24-25.

On August 5, 2024, Plaintiff moved for default judgment with a declaration from Plaintiff's counsel. ECF Nos. 26-27. Following reassignment of this case to the undersigned, on August 8 and 19, 2024, Judge England ordered Plaintiff to file the noticed motion for default judgment before the undersigned. ECF Nos. 29-30, 32. On August 19, 2024, Plaintiff refiled the motion before the undersigned, though the motion continues to rely on the declaration previously filed by Plaintiff's counsel. ECF Nos. 33-34.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing *Pope v. United States*, 323 U.S. 1 (1944); *Geddes v. United Fin. Group*, 559 F.2d 557 (9th Cir. 1977)); *see also DirectTV v. Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures

contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. *Dundee*, 722 F.2d at 1323.  Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. *Dundee*, 722 F.2d at 1323-24; *see also James v. Frame*, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d. 1089, 1092 (9th Cir. 1980).  The court considers a variety of factors in exercising this discretion. *Eitel*, 782 F.2d at 1471-72.  Among them are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

For the following reasons, the *Eitel* factors favor entry of default judgment.

### a. Possibility of Prejudice to the Plaintiff

The first *Eitel* factor contemplates the possibility of prejudice to the plaintiff if default judgment is not entered. *Eitel*, 782 F.2d at 1471.  Prejudice can be established where failure to enter a default judgment would leave plaintiff without a proper remedy. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal 2002).  Here, Plaintiff has no alternative for recovering damages suffered from Defendant's failure to pay amounts owed under the Agreement and related invoices.  This is particularly true when Defendant is a foreign company for whom conventional means of service have proven ineffective, causing a judge to grant Plaintiff's motion to serve documents by email. ECF No. 21.  Accordingly, the first factor weighs in favor of default judgment.

### b. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors jointly examine whether the plaintiff has pleaded facts sufficient to establish and succeed upon its claims. *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citing

4

*Kleopping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. Feb. 14, 1996)). Although the Complaint seeks recovery under seven causes of action, the damages for each claim are based on amounts owed under the Agreement and three of the invoices generated under this Agreement. See ECF No. 1 at 7-13.

### i. Merits of the Agreement and Invoices

The Agreement provides a 30-day acceptance period after receipt of ordered goods at Defendant's facilities, during which Defendant may compare the product against predefined "Rejection criteria" and claim rejection credit if applicable. ECF No. 27-4 at 4. If both parties agreed in such time that the particular delivery was a "reject lot[,]" Plaintiff agreed to credit up to the full value of the sale item. ECF No. 27-4 at 3. Failure to reject the lot within the 30-day period would result in the delivery being deemed accepted. ECF No. 27-4 at 4.

The Agreement states that payment terms "will be cash on delivery, unless mutually agreed to in writing by both parties." ECF No. 27-4 at 3. Addendum B, however, added that payment was due 60 days from the date of the invoice. ECF No. 27-4 at 11. Section 3.3 of the Agreement imposes a late payment charge of 1.5% per month on any amounts unpaid after the corresponding due date. ECF No. 27-4 at 3.

The Agreement's force majeure clause does not hold either party liable for failure to perform obligations thereunder due to "acts of God,…government regulations or other causes beyond its reasonable control." ECF No. 27-4 at 7-8.

One of the invoices at issue, dated January 31, 2022, assessed total charges of $244,981.50. ECF No. 27-1 at 2. Two invoices dated February 1, 2022, assessed charges of $224,379.25 and $298,135.45. ECF Nos. 27-2 at 2, 27-3 at 2. The principal of the three invoices totals $244,981.50 + $224,379.25 + $298,135.45 = **$767,496.20**.

All three invoices had become due by April 2, 2022, 60 days after February 1, 2022. Based on this, the Complaint alleges that as of its January 30, 2023 filing, the invoices had accrued 9 x 1.5% = 13.5% interest, or $103,611.99. *See* Compl. at ¶¶ 44-46. Plaintiff now requests 27 x 1.5% = 40.5% interest, or $99,217.50 + $90,873.59 + $120,744.85 = **$310,835.94**, to reflect interest accrued as of August 5, 2024. ECF No. 33 at 2; ECF No. 27 at ¶¶ 14-22.

5

An amount awarded in default judgment may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against him so that he may make a calculated decision about whether it is in his best interest to answer." *Operating Engineers Health and Welfare Trust Fund for Northern California v. Pipe-Net, Inc*., 2024 WL 3390528, at *5 (N.D. Cal. June 14, 2024).

At the same time, clerks can enter default judgment with prejudgment interest, even without application to the court, if interest is part of "a sum certain or a sum that can be made certain by computation[.]" Fed. R. Civ. P. 55(b)(1). The Ninth Circuit in *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.* noted that in the First Circuit, damages were only for a sum certain if "the complaint and supporting affidavits…set forth a claim capable of simple mathematical computation[.]" 375 F.3d 922, 929 (9th Cir. 2004) (citing *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 20 (1st Cir. 2003)). Adopting this approach, it held that when the submitted documents provided both "the specific formulas for determining the amount owed" and "the various amounts necessary for calculating the total amount due[,]" entry of default judgment for such damages was allowed. *Franchise Holding II*, 375 F.3d at 929.

Here, although the Complaint specified the interest that had accrued up to that point, the Prayer for Relief simply asked for "damages…and interest on such amounts as provided by the" Agreement. ECF No. 1 at 13. As discussed above, the court can ascertain the interest accrued based on the value of the invoices and the monthly interest rate. *See* ECF Nos. 27-1–27-4. Default judgment for the full $310,835.94 in interest is permissible.[2]

Ascertainable damages under the Agreement total $767,496.20 + $310,835.94 = **$1,078,332.14**.

---

[2] The motion for default judgement does not address one allegation from the Complaint that might conceivably reduce the amount owed. In September 2022, months after Plaintiff generated the three invoices at issue, Plaintiff offered Defendant a $10,387 credit for a lot that Defendant sought to reject. Compl. at ¶ 38. Defendant had not rejected the lot, however, until April 22, 2022, over 30 days after the deadline for rejection had passed, and did not specify a legitimate reason for the untimely rejection. *Id.* at ¶¶ 35-37; ECF No. 27-4 at 3-4. Plaintiff extended the offer solely as a sign of good will, and the Complaint does not suggest Defendant ever accepted it. Compl. at ¶ 38. The Court will not reduce damages by this amount.

### ii. Attorney's Fees and Costs

In an attachment to his affidavit, counsel for Plaintiff provides statements showing it incurred $185.79 x 2 = **$371.58** in costs for attempting personal service of the Summons and Complaint. ECF Nos. 27-5–27-6. Plaintiff then paid **$2,550** for service on Defendant in Vietnam via "request to a Central Authority designated by the state for Hague purposes (Article 5)." ECF No. 27-7 at 2. Counsel for Plaintiff also asserts that it paid a **$402** filing fee for this action. ECF No. 27 at 3. Nothing suggests that these costs are unreasonable. Costs total $371.58 + $402 + $2,550 = **$3,323.58**

### iii. Summary of Analysis Concerning Damages, Fees, and Costs

For the reasons explained herein, under *Eitel* factors two and three, Plaintiff is entitled to **$1,078,332.14 in damages and $3,323.58 in attorney's fees and costs, for a total of $1,081,655.72.**

### c. Sum of Money at Stake

In weighing the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct." *PepsiCo, Inc.*, 238 F.Supp.2d at 1176-77. This factor weighs against default judgment when a large sum of money is at stake. *Eitel*, 782 F.2d. at 1472.

Here, Plaintiff seeks **$1,078,332.14 in damages and $3,323.58 in attorney's fees and costs, for a total of $1,081,655.72**. Although this amount is substantial, Defendant is an international company that bought three shipments of seeds for **$767,496.20**. The damages at issue are reasonably proportionate to the harm caused by Defendant's failure to pay three-quarters of a million dollars for over two years. This factor does not weigh against default judgment.

### d. Possibility of Disputed Material Facts

The fifth *Eitel* factor examines whether a dispute regarding material facts exists. *Eitel*, 782 F.2d. at 1471-72. Here, Defendant failed to appear, leading to an entry of default. Given that circumstance, there is no possibility for a dispute of material fact. See *Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that

any genuine issue of material fact exists"). Indeed, it appears this factor generally weighs against entry of default judgment only when a defaulting party contests a motion for default judgment and meaningfully disputes material facts. *See, e.g., NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 610, 616 (9th Cir. 2016) (finding that defaulting party which did not answer because it believed service was defective, but then contested a motion for default judgment, still had not raised possibility of disputed material facts where it "stat[ed] only general objections to the existence of a contract, the extent of the relationship between the parties, and the alleged services performed"). This factor weighs in favor of a default judgment.

### e. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers whether Defendants' failure to answer is due to excusable neglect. *Eitel*, 782 F.2d at 1471-72. This factor considers due process, ensuring defendants are given reasonable notice of the action. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Here, Defendant was properly served with a copy of the Complaint by email to three different email addresses, following an order by Judge England granting Plaintiff leave to do so. ECF Nos. 21, 23. No proof of service is on file for the request for entry of default (ECF No. 24), said entry (ECF No. 25), the original motion for default judgment (ECF No. 26), the declaration or proposed order in support thereto (ECF Nos. 27-28), or the current motion for default judgment (ECF No. 33). Although this does raise questions as to whether Defendant would have appeared if this motion was served, "[n]o service is required on a party who is in default for failing to appear." *See supra*; Fed. R. Civ. P. 5(a)(2). This factor does not weigh against default judgment.

### f. Policy of Deciding Cases on the Merits

The seventh *Eitel* factor considers the courts' general disposition favoring judgments on the merits. *Eitel* 782 F.2d at 1472. Defendant's failure to appear has made a judgment on the merits impossible. Accordingly, this factor does not weigh strongly against a default judgment.

### CONCLUSION

Having considered the *Eitel* factors, the undersigned finds they weigh in favor of granting Plaintiff's motion for default judgment.

**IT IS HEREBY RECOMMENDED** that:

Plaintiff's motion for default judgment (ECF No. 33) be GRANTED in the amounts of $1,078,332.14 in damages and $3,323.58 in attorney's fees and costs.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the Court.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within 14 days after service of the objections.  The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 17, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE